UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| The Estate of Usaamah Abdullah Rahim,<br><br>　　　Plaintiff<br><br>V.<br><br>United States of America, et al.,<br><br>　　　Defendants | Civil Action No. 1:18-cv-11152-IT |

**PLAINTIFF'S OPPOSITION TO JOHN DOE 1's
MOTION FOR SUMMARY JUDGMENT**

Now comes The Estate of Usaamah A. Rahim (hereinafter "Plaintiff"), and hereby opposes the Defendant United States of America's Motion for Summary Judgment.

Specifically, Plaintiff opposes John Doe 1's Motion for Summary Judgment, on the basis of qualified immunity, and asserts that there are multitude material facts which are in dispute and impact whether John Doe 1's use of deadly force was objectively reasonable under the Fourth Amendment. Moreover, the Plaintiff can meet the burden that every reasonable officer would have understood that the decision to use deadly force in the circumstances of this case violated the Fourth Amendment.

For those reasons, and those more particularly delineated herein, the Plaintiff respectfully requests this honorable court deny the Defendant's Motion for Summary Judgment.

Plaintiff further provides supporting materials and a memorandum of law in support of these oppositions.

|  |  |
|---|---|
| The Estate of Usaamah Abdullah Rahim, ) <br> ) <br>     **Plaintiff** ) <br> ) <br> V. ) <br> ) <br> United States of America, et al., ) <br> ) <br>     **Defendants** ) <br> ) | Civil Action No. 1:18-cv-11152-IT |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO
JOHN DOE 1's MOTION FOR SUMMARY JUDGMENT**

    **I.    FACTS**

Plaintiff hereby relies on those admitted and disputed facts contained in Defendant's Undisputed Material Facts, and the Plaintiff's Statement of Material Facts, and on the record as produced in Exhibits 1-12, and hereby incorporates those certain documents by reference as if set forth fully herein.

    **II.    LEGAL STANDARD**

Fed. R. Civ. P 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).

> "The trial court is not to pass upon the credibility of the witnesses or the weight of the evidence of make its own decisions of facts," and "should not grant a party's motion for summary judgment merely because the facts he offers appear more plausible than those tendered in opposition" or because it appears that the non-moving party is not likely to prevail at trial. Attorney General v. Bailey, 386 Mass. 367, 370 (Mass. 1982).

However, it is well settled law in the District of Massachusetts and the majority of Federal Courts that "the party opposing the motion for summary judgment bears the burden of responding only after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." Celotex Corp., 477 U.S. at 322 (1986), *citing* Catrett v. Johns-Manville Sales Corp., 244 U.S. App. D.C. 160, 163, 756 F.2d 181, 184 (1985).

> "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp., 477 U.S. at 323 (internal quotations omitted).

Furthermore, under Fed. R. Civ. P. 56(e), a non-moving party "need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324.

> … summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), CITING Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ("… availability of summary judgment turn[s] on whether a proper jury question has been presented.").

Additionally, under Fed. R. Civ. P. 56(d), when a nonmovant shows by affidavit or deceleration that, for specified reasons, it cannot present facts essential to justify its

opposition, the court may, among other options, defender the motion or deny it. Plaintiff's Exhibit 12 – Plaintiffs Affidavit Regarding Unavailable Facts.[1]

Further, the Court does not make any credibility determinations or weigh the evidence. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).

For the purposes of a summary judgment motion, the facts are viewed in the light most favorable to, the nonmoving party. See e.g. Plumhoff v. Rickard, 572 U.S. 765, 766 (2014). *See also* (Emery v. Merrimack Valley Wood Products, Inc., 701 F.2d 985, 986 (1st Cir. 1983) (Reversal required "when issues of fact which were adequately raised before the district court need to be resolved before the legal issues in the case may be decided.")

**III. ARGUMENT**

Summary Judgment should not enter in favor of John Doe 1 on the basis of qualified immunity because there are material issues of fact regarding the circumstances surrounding Mr. Rahim's death, and John Doe 1 and John Doe 2's shooting of Mr. Rahim. John Doe 1 did not act reasonably under the circumstances, excessive use of force against Mr. Rahim was not justified, and he knew or should have known that his violation of Mr. Rahim's constitutional right was contrary to the law.

**A. There are genuine issues of material fact regarding the circumstances of John Doe 1's shooting of Mr. Rahim.**

Factual disputes as to the circumstances of Mr. Rahim's death need to be adjudicated by a fact finder prior to any assessment of qualified immunity. Although qualified immunity is generally a question of law for the court, Hunter v. Bryant, 502

---

[1] While plaintiff has provided some information and materials to support its opposition, plaintiff avers that an adequate opportunity for discovery has not been provided to obtain crucial facts necessary for its opposition to the defendants' motions.

U.S. 224, 228 (1991), the First Circuit has held where there is a disputed material fact which forms the basis for the qualified immunity the factual dispute must be resolved by the fact finder and summary judgment is inappropriate. Kelley v. LaForce, 288 F.3d 1, 7 (1st Cir. 2002) *quoting* Swain v. Spinney, 117 F.3d 1, 10 (1st Cir. 1997). In Kelley, such a case existed that precluded summary judgment on the qualified immunity question because there was a material dispute as to what was actually known by the officers at the time of their actions which resulted in the violation of constitutional rights. Id. at 7-8.

Here, several factual disputes exist as to the circumstances surrounding the stop and seizure of Mr. Rahim, leading up to officers' firing their weapons, which killed Mr. Rahim. First, factual disputes exist as to whether John Doe I, and John Doe 2 approached Mr. Rahim with their guns already drawn. Defendant John Doe 1's contention is that his weapon was drawn, in *response* to Mr. Rahim pulling a large military-style knife from his waist. John Doe 1 avers that Mr. Rahim was approached in a non-confrontational manner, and that John Doe 2 immediately identified himself as a Boston Police Officer. However, the footage of the incident, paired with audio recording of the incident, appear to indicate that John Doe 1 and John Doe 2 approach Mr. Rahim close to the same time, and the officer to the right-hand side of Rahim draws his weapon immediately upon reaching Mr. Rahim. John Doe 1's Exhibit 9 – Surveillance of Rahim. In fact, both of the officers appear to approach Mr. Rahim, immediately closing in on him with their weapons already drawn and pointing to Mr. Rahim. John Doe 1's Exhibit 9 – Surveillance of Rahim. In a totality of the circumstances examination of these facts, this is an important factor in determining whether the officers were then justified or reasonable in using deadly force, because Mr. Rahim's response or reaction to the

officers was a driving force in their decision to fire. If Mr. Rahim drew a knife in response to two plain clothes individuals stopping him at gun point, perhaps his initial reason for holding a knife was because of the very situation that the officers created. This is a material fact, which should be determined and weighed by a fact finder.

The recording does not clearly establish that John Doe 2 identified himself as a Boston Police Officer to Mr. Rahim when he approached him. John Doe 1's Exhibit 9 – Surveillance of Rahim. The first clear words that can be heard in the audio as John Doe 2 approaches Rahim are "put your hands up!" Statements from other civilian and by-stander witnesses contradict this. One witness stated that he saw a police officer with a pony tail exit the police cruiser and approach Mr. Rahim with her weapon *already drawn*. Plaintiff's Exhibit 11 – Transcript of Interview of Sargent Witness E[2].

Factual disputes exist as to whether or not Mr. Rahim was holding a large military-style knife. Although several law enforcement officers, including John Doe 1 and John Doe 2's sworn statements aver that he was, and some witnesses corroborate that *something* was in Mr. Rahim's hand, there are also several witness statements that do not specify whether Mr. Rahim was holding a large military-style knife in his hands, and more specifically *brandishing* such knife. Plaintiff's Exhibit 7 – Transcript of Interview of Witness A; Plaintiff's Exhibit 8 – Transcript of Interview of Witness B; Plaintiff's Exhibit 8 – Transcript of Interview of Witness B; Plaintiff's Exhibit 9 – Transcript of Interview of Witness C. The footage of the shooting does not clearly demonstrate what, if anything, Rahim was holding in his hand. John Doe's Exhibit 1 – Surveillance of Rahim. The report from the Boston Police Department's Criminalist indicates that no

---

[2] All names and any identifying information of witnesses contained in transcripts, were redacted by the government prior to being provided to plaintiff.

latent prints were discovered on the knife sheath recovered at the scene.  Plaintiff's Exhibit 2 – Knife Sheath Examination Report.  Moreover, no reports have been provided to Plaintiff regarding the results of a latent print analysis on the alleged military-style knife that was recovered from the scene of the shooting.

The distance that Rahim was from John Doe 1, and John Doe 2 is not clear in the video of the shooting.  The footage shows that Mr. Rahim was surrounded by at least seven (7) law enforcement officers with their guns drawn, in a parking lot, with a large open area affording officers the chance to back-up, and move.  The distance between the shooters and Rahim was never determined definitively by the Boston Police Department's Criminalist, who examined the clothes Mr. Rahim was wearing when he was shot.  Plaintiff's Exhibit 3 - Criminalist's Report; Plaintiff's Exhibit 4 - Email from Criminalist.

An additional factual dispute, is regarding law enforcement officers surveilling Mr. Rahim on June 2, 2015, believe he was an immediate threat, prior to approaching him.  Information provided thus far by Defendants seem to indicate that officers initially decided to stop Mr. Rahim after the phone call between him and Wright at approximately 5:00 A.M., on June 2, 2015, because they believed Mr. Rahim was an immediate threat to public safety.  However, a decision was made to stand down, and instead of going to stop Mr. Rahim, conduct a terry stop, or apprehend him, officers decided to continue to surveille Mr. Rahim, watch him go home, and wait a considerable amount of time before approaching him. Plaintiff's Exhibit 1 – Dispatch Recording Transcript June 2, 2015; John Doe 1's Exhibit 1 - Sworn Statement of John Doe 1; John Doe 1's Exhibit 2 – Sworn Statement of John Doe 2.  In that time, no arrest warrant or search warrant was

sought, and although officers contend that he was an immediate threat to public safety, they did not intervene or seek to apprehend him for close to two (2) hours after the phone call with Wright[3], which allegedly led them to believe Mr. Rahim was going to effectuate an immediate attack on law enforcement officers.

      Lastly, the manner in which Mr. Rahim was moving, and allegedly advancing toward officers, is a material fact in dispute. Civilian and law enforcement witnesses attest that there were approximately seven (7) officer surrounding Mr. Rahim. In an interview, a number of witnesses indicate that noted that Mr. Rahim was surrounded, essentially in a circle like shape, by the law enforcement officers. Plaintiff's Exhibit 8 – Transcript of Civilian Witness B; Plaintiff's Exhibit 11 – Interview of Sargent Witness E, 9-10, 12; Exhibit 10 – Transcript of Interview – Civilian Witness D, p. 6. One witness stated some officers were moving backwards, and some were moving forward, with the direction of Mr. Rahim was moving. Plaintiff's Exhibit 8 – Transcript of Civilian Witness B, p. 19-21. The video provided by Defendant John Doe 1, paired with audio shows him essentially surrounded, and even depicts a police cruiser behind him. John Doe Exhibit 9 – Video of Rahim. In the video, the officer who appears to fire the first shot actually moves toward Mr. Rahim immediately before the shot is taken, and doesn't appear to be back peddling or retreating when he fires his weapon. This directly impacts John Doe 1 and John Doe 2's assessment of whether Mr. Rahim was posing an imminent threat to their safety, and whether they were reasonable in shooting and killing Mr. Rahim, a fact that must be decided by a jury.

---

[3] On June 2, 2015, Mr. Wright was another suspect being surveilled by the FBI.

The dispute between the above referenced material facts renders the within matter inappropriate for adjudication at the summary judgment stage. In fact, "a toehold is enough to survive a motion for summary judgment." Marr Equipment Corp. v. I.T.O. Corp., 14 Mass. App. Ct. 231, 235 (Mass. App. Ct. 1982). The First Circuit has held that a jury question existed where Plaintiff and witnesses posed a version of events that differed from the arresting officers and therefore, the case rightfully go to the jury for adjudication. Santiago v. Fenton, 891 F.2d 373, 384 (1st Cir. 1989) ("Here, the evidence would have permitted a jury to find that the officers lacked probable cause to arrest Santiago for allegedly abusive conduct. Santiago and his witnesses testified that he never pushed or struck Rivera nor used loud and obscene language. The jurors could have believed plaintiff's version of what occurred, and as a result could have found no probable cause for the arrest. Therefore, this case should be sent to a finder of fact to determine the facts surrounding the within claims.")

**B. There was a clear violation of Mr. Rahim's Fourth Amendment rights.**

A claim that a law enforcement officer used excessive force "is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014). The Supreme Court has instructed that the Fourth Amendment's search and seizure provisions control and that the use of deadly force incident to arrest depends solely on whether the officer's conduct was "objectively reasonable." Graham v. Connor, 109 S. Ct. 1865, 1872 (1989). In a determination of whether an officer's actions were objectively reasonable, a balancing test is applied, evaluating "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

governmental interests at stake." Id. (internal quotation marks and citation omitted). Mitchell v. Miller, 790 F. 3d 73, 77 (1st Cir. 2015).

It is well settled that the use of excessive force is an area of the law in which the results depend very much on the facts of each case… and existing precedent governing the specific facts at issue, is necessary to overcome qualified immunity. Kisela v. Hughes, 138 S. Ct. 1148, 1152-53 (2018); District of Columbia v. Wesby, 138 S. Ct. 577, 589-590 (2018). However, the Supreme Court has noted that "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. . . . ." Wesby, 138 S. Ct. 577, 590 (2018).

In City & City of San Francisco, Calif. v. Sheehan, 135 S. Ct 1765 (2015), which defendant points to as a case that establishes qualified immunity protects law enforcement officers in situations where the confront an immediate threat to their safety, facts are materially different from the instant case. In Sheehan, law enforcement officers were uniformed, and the person encountered, Teresa Sheehan explicitly threatened police, stating, "I am going to kill you. I don't need help." 135 S. Ct 1765, 1770. The largely surrounded the officers' entry into Sheehan's room, and whether officers acted in accordance with their training in a situation with a person suffering from mental illness, and not specifically supporting the proposition that simply because Sheehan was holding a knife, the officer's use of force was reasonable. Id. at 1775-1778. Here, officers encountered Mr. Rahim in a parking lot, an open area. They were expecting him. He was surrounded by at least seven (7) police officers, with their guns drawn and pointing at him. He was not in a closed in space, inside of a bedroom in a home, rather he was in

an open parking lot, and therefore the officers perceived threat of imminent harm to their safety, was not reasonable.

Similarly, other cases cited by the Defendant including, Norton v. City of South Portland, 831 F. Supp. 2d 340, 363-64 (D. Me 2011), and Roy v. Inhabitants of City of Lewiston, 42 F. 3d 691, 695-96 (1st Cir. 1994), are factually and materially different than the instant case. In Norton, the Plaintiff was in hours long hostage-like circumstance, where Norton made it clear he was going to kill the very officers outside of his home, who had been posted there for a number of hours. 831 F. Supp. 2d at 363-64. In Roy, when officers attempted to disarm Roy, he made a kicking-lunging motion toward the officers, holding multiple knives. 42 F. 3d at 691-93.

The facts purported by the Defendants do not establish that Mr. Rahim was lunging, jumping or running towards the officer with a knife, and actually preparing to strike. Rahim was surrounded by seven (7) plain clothes officers, and even if a knife was in his hand, he did not immediately move to lunge at an officer. John Doe 1's decision to use deadly force against Mr. Rahim in these circumstances were unreasonable. Further, unlike the above-mentioned cases, the lethal force used against Mr. Rahim ultimately took his life.

In Deorle v. Rutherford, 272 F.3d 1272, 1284 (9th Cir., 2001), the Ninth Circuit court, in holding that the officers use of deadly force was not reasonable, noted that "[s]hooting a person who is making a disturbance because he walks in the direction of an officer at a steady gait with a can or bottle in his hand is clearly not objectively reasonable." The decision further held that "[a]lthough there is no prior case prohibiting the use of this specific type of force in precisely the circumstances here involved, that is

insufficient to entitle Rutherford to qualified immunity: notwithstanding the absence of direct precedent, the law may be, as it was here, clearly established." Id. at 1285-86.

As such, there was a clear violation of Mr. Rahim's Fourth Amendment right, and John Doe 1 and John Doe 2's excessive use of force was unreasonable.

**C. Plaintiff is unable to present or provide certain facts essential to further justify its opposition.**

The record and exhibits provided by defendants thus far do not contain sufficient evidence for this issue to be decided as a matter of law. Notably, plaintiffs have not had an opportunity to depose, or engage in any (meaningful) discovery in the present case. Although there are a number of exhibits submitted the United States and John Doe 1, they contain mostly statements and information gathered, by law enforcement individuals, without any independent opportunity by plaintiff to investigate, interview, or gather information. Plaintiff has provided an affidavit, pursuant to Fed. R. Civ. P. 56(d), noting for specified reasons, it cannot present certain facts to justify its opposition. Plaintiff's Exhibit 12 - Plaintiff's Affidavit Regarding Unavailable Facts.

For the above reasons, Plaintiff respectfully requests this Honorable Court to deny John Doe 1's Motion for Summary Judgment.

Dated: February 20, 2019

Respectfully Submitted
The Estate of Usaamah A. Rahim
By Its Attorneys

*/s/ Sara Attarchi*

Joseph B. Simons, BBO# 684030
Sara Attarchi, BBO# 697486
SIMONS LAW OFFICE
1 International Place, #1400
Boston, MA  02110
(617) 544-9000
joe@jbsimonslaw.com
sara@jbsimonslaw.com

## LOCAL RULE 7.1 CERTIFICATION

I certify that I conferred with counsel before filing this opposition.

*/s/ Sara Attarchi*

Sara Attarchi

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 20, 2019.

*/s/ Sara Attarchi*

Sara Attarchi